IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KENDRA OWEN, and SHIELA and KENNETH JACKSON, on their own behalf and on behalf of a class of those similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:22-cv-00142 |
| GIBSON COUNTY, INDIANA, and GIBSON COUNTY ANIMAL SERVICES, | ) ) ) | |
| | ) | COMPLAINT – CLASS ACTION |
| Defendants. | ) | |

## VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND INDIVIDUAL DAMAGES

**Introductory Statement**

1.  In 2012, the Gibson County Board of Commissioners—the executive body for Gibson County, Indiana ("the County")—passed Ordinance No. 2012-1 ("the Animal Control Ordinance"), a comprehensive ordinance regulating the ownership, possession, and care of animals in the County that is primarily enforced by Gibson County Animal Services ("GCAS"). As is relevant here, the County authorizes the issuance of citations requiring the payment of fines, *inter alia*, to persons who permit their animals to be "at large" in the County. The problem, however, is that neither the County nor GCAS provides any mechanism whatsoever for persons to challenge the merit of any such citation. This represents a clear and unmistakable due process violation.

2.  In May 2022, Shiela and Kenneth Jackson were issued a citation when a dog in the custody of their daughter, Kendra Owen, allegedly left their property and harassed a postal employee. Insofar as the Animal Control Ordinance does not impose liability on a property owner for the

1

actions of an animal under someone else's control, the Jacksons do not understand why the citation was issued to them, and Ms. Owen has assumed primary responsibility for contesting the citation. At the time of the events giving rise to the citation, the dog was controlled by an invisible dog fence and the plaintiffs maintain that she was therefore not "at large" within the meaning of the Animal Control Ordinance. They believe that they have other defenses to the citation as well, and they therefore wish to challenge the validity of the citation. As indicated, however, there is no mechanism to do so and when Ms. Owen inquired as to the matter she was informed explicitly by a representative of GCAS that "whatever [GCAS] decide[s] goes."

3. Moreover, this is not an isolated occurrence. Between January 2021 and August 2022, more than a hundred other citations were issued by or on behalf of GCAS and the recipients of those citations likewise were provided no opportunity to contest the validity of the citation. This case should therefore be certified as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, and appropriate class-wide declaratory and injunctive relief should issue. The plaintiffs should also be awarded their individual damages.

**Jurisdiction, Venue, and Cause of Action**

4. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

7. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

8. Kendra Owen is an adult resident of Gibson County, Indiana.

9. Shiela Jackson is an adult resident of Gibson County, Indiana.

10. Kenneth Jackson is an adult resident of Gibson County, Indiana.

11. Gibson County, Indiana ("the County") is one of Indiana's ninety-two counties and is located in southwestern Indiana.

12. Gibson County Animal Services ("GCAS") is the agency of the County that is responsible for operating the County's animal shelter and for enforcing the County's animal control ordinance. On information and belief, GCAS is operated by a private corporation, Emmy Corp.

**Class Action Allegations**

13. This cause is brought by the named plaintiffs on behalf of themselves and a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

14. The class is defined as follows:

> Any and all persons who received a written warning or citation by or on behalf of Gibson County Animal Services, including but not limited to persons who received a written warning or citation for an alleged violated of Gibson County Ordinance No. 2012-1 (or any amendment thereto), on or after September 12, 2020, or who will receive such a written warning or citation in the future.

15. As defined, the class meets all requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically:

   a. The class is so numerous that the joinder of all members is impracticable. In response to a public-records request, the plaintiffs have been provided information indicating that 103 citations were issued by GCAS between January 2021 and August 2022 and this number will, of course, continue to grow. The plaintiffs are unaware as to whether additional persons have been issued written warnings by GCAS.

   b. There are questions of law or fact common to the class, namely whether the defendants' policies for offering individuals an opportunity to challenge a citation issued to them violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

   c. The claims of the representative parties are typical of those of the class.

   d. The representative parties will fairly and adequately represent the class.

16. The class meets the further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure insofar as the parties opposing the class have, at all times, acted or refused to act on grounds generally applicable to the class.

**Factual Allegations**

*Gibson County's Animal Control Ordinance*

17. On January 3, 2012, the Gibson County Board of Commissioners—the County's executive officers—adopted County Ordinance No. 2012-1 ("the Animal Control Ordinance"). A true and correct copy of this ordinance is attached and incorporated herein as **Exhibit 1**.

18. The Animal Control Ordinance regulates, in a variety of manners, the ownership, possession, and care of pets in the County.

19. As is relevant here, Section 3 of the Animal Control Ordinance provides, in its entirety, as follows:

> No person shall permit any animal to run at large, or keep, possess or harbor any animal which by loud and frequent howling, or other noise, or by entering property other than that of the owner, causes annoyance or disturbance to any person in Gibson County, Indiana unless the animal is under the reasonable control of its owner or keeper or some individual authorized by him or her or unless engaged in lawful hunting accompanied by the owner or custodian of said animal or running on forested or agricultural land or with the permission of the land owner.

20. The term "at large" is defined by Section 1(K) of the Animal Control Ordinance as follows:

> The term "at large" shall mean any animal that is:
>
> 1. Not on a leash and is off the property of its owner, its owner's agent or its keeper;
> 2. On a leash that does not adequately confine the animal to the property of its owner, its owners [*sic*] agent or its keeper; or
> 3. On a leash that is not otherwise under the immediate control of a person physically capable of restraining the animal.

21. Section 4 of the Animal Control Ordinance then provides that, if an animal control officer determines "that an animal is being permitted to run at large or causes annoyance or disturbance

to any person," the animal control officer may issue a citation. Upon a first offense, an individual is to be issued a written warning; a second offense results in a fine not to exceed $50.00; a third offense results in a fine not to exceed $100.00; and a fourth or subsequent offense results in a fine not to exceed $200.00.

22. This section then provides that citations issued pursuant to Section 4 "shall be administered though [*sic*] the Administrative Court of the Gibson County Commissioners."

23. However, on information and belief the Administrative Court of the Gibson County Commissioners—also known as the Commissioners Court—no longer exists. The minutes from an August 2018 public meeting of the Gibson County Board of Commissioners, which are attached and incorporated herein as **Exhibit 2**, state explicitly (on page 5) that there is "[n]o longer a Commissioners Court." The minutes further indicate that there was a "[s]uggestion made by Commissioners to have County Attorney investigate and give a recommendation."

24. The plaintiffs are unaware as to the results of any such investigation or as to the content of any such recommendation.

### *The Citation Issued to the Plaintiffs*

25. Kendra Owen is the daughter of Shiela and Kenneth Jackson, and rents a room in her parents' home at 2219 S. 1200 E. in Oakland City, Indiana. Oakland City is a rural community located in the County.

26. Ms. Owen's son owns a dog, Rousey. Although Rousey is owned by Ms. Owen's son, she lives with Ms. Owen and Ms. Owen has primary responsibility for caring for and otherwise controlling Rousey. Ms. Owen's son does not live with Ms. Owen and her parents.

27. The property Ms. Owen shares with her parents does not have a yard with a physical fence. However, Ms. Owen has installed an invisible dog fence that ensures that Rousey remains on her

property. Rousey will often have free range of Ms. Owen's property but will not be able to leave the property due to the invisible dog fence.

28.     On one or more occasions in early May of 2022 a postal employee visited Ms. Owen's residence to deliver mail and/or a package. Rousey is not aggressive but is friendly and can be excitable. In the past, postal employees have enjoyed being greeted by Rousey and have even kept treats on their person to give her when they delivered mail or packages, and Rousey was therefore happy to see the postal employees when they delivered mail or packages to Ms. Owen.

29.     Although Ms. Owen did not observe Rousey's interaction(s) with the postal employee, it is her understanding that Rousey may have jumped on the postal employee and/or the postal employee's vehicle.

30.     On information and belief, at no point did Rousey leave Ms. Owen's property. As a part of the invisible dog fence system, Rousey wears a specific collar. If she were to somehow stray outside the confines of the invisible dog fence, an "alert" would be sent to an online application or "app," accessible by Ms. Owen via her smart phone, created by the company that manufactured the invisible dog fence. A review of this app appears to confirm that Rousey did not leave the confines of the invisible dog fence.

31.     Nonetheless, the postal employee complained about Rousey to GCAS and GCAS, on behalf of the County, issued a citation directed to Shiela and Kenneth Jackson, who own Ms. Owen's property but do not maintain custody or control of Rousey. A true and correct copy of this citation is attached and incorporated herein as **Exhibit 3**.

32.     While under appropriate circumstances the Animal Control Ordinance imposes liability on persons who own, keep, possess, or harbor animals, it does not impose any liability on property owners who simply rent their property to persons with an animal. The plaintiffs are therefore

unsure as to why the citation was issued to the Jacksons, and Ms. Owen has assumed responsibility for addressing and, were she allowed to do so, contesting the citation.

33. The citation indicates that it was being issued because Rousey was "running at large," purportedly in violation of "Set 4"—verbiage that the plaintiffs interpret as intending to reference Section 4 of the Animal Control Ordinance. A box identifying the offense as the "first offense" and indicating that the fine was $50.00 was checked.

34. Despite the fact that Section 4 of the Animal Control Ordinance provides that an individual is to be issued a written warning, but no fine, for a first violation, none of the plaintiffs received a written warning prior to the issuance of the citation.

35. In subsequent communications with a representative of GCAS, Ms. Owen was informed that the Jacksons were named on the citation insofar as the "property owners" are liable. Not only is this inconsistent with the Animal Control Ordinance itself, but it also makes no sense: insofar as an animal is only considered "at large" if it is "off the property of its owner," there *is* no property owner at the time of the offense.

36. In any event, the citation provided the following information concerning the manner of payment and the mechanism for contesting the citation's validity:

> All Fines must be paid within 30 days to Gibson Co. Animal Services at P.O. Box 474  Princeton, Indiana 47670.
>
> \*          \*          \*
>
> To dispute the validity of this citation, you may appear at Commissioners Court on Date _____ at Time _____a.m. at 225 N. Hart St.  Princeton, IN 47670.

The date and time at which the plaintiffs could appear "[t]o dispute the validity of th[e] citation" were left blank. And, just as importantly, as indicated above the Commissioners Court no longer exists.

***The plaintiffs' efforts to contest the citation and the absence of any process by which the plaintiffs or other persons issued citations may do so***

37. The plaintiffs desired and continue to desire to contest the citation that was issued to them. Because the citation itself did not provide meaningful information on how they might do so, on May 17, 2022 Ms. Owen sent an e-mail to GCAS in which she placed "Hearing" in the subject line and inquired as follows:

> *Sir or Madam,*
>
> *I need to find out how I can get a hearing on the citation I received,*
>
> *Thanks!*
>
> *Kendra*

A true and correct copy of this e-mail is attached and incorporated herein as **Exhibit 4**. The e-mail address to which Ms. Owen sent this e-mail is listed on the "contact" page of GCAS's website (https://www.gcasonline.org). Nonetheless, Ms. Owen did not receive a response to her e-mail.

38. Given that she did not receive a response to her e-mail, on or about May 18, 2022 Ms. Owen called GCAS on the telephone in order to determine how she could "dispute" a citation and was informed explicitly by a representative of GCAS that "there is no dispute." Instead, the representative of GCAS provided instructions to Ms. Owen on how she could mail her payment to GCAS.

39. The issuance of a citation requiring the payment of a fine, of course, implicates the property interests of the plaintiffs and of other persons who have received or will receive a citation from or on behalf of GCAS.

40. Notwithstanding the fact that individuals' property interests are clearly implicated, however, neither the County nor GCAS provides any process whatsoever for persons to dispute or otherwise challenge the validity of a citation issued to them by or on behalf of GCAS.

41. Both the County and GCAS are responsible for establishing such a process and have the power to ensure that such a process is available and is provided to persons who receive citations.

42. In July 2022, Ms. Owen, by counsel, submitted a public-records request to GCAS in which she sought copies of all citations issued by or on behalf of GCAS since January 1, 2020. Although GCAS declined to provide responsive documents, it did provide a monthly breakdown of the number of citations issued by or on behalf of GCAS since January 2021. As indicated above, the information provided establishes that 103 such citations were issued between January 2021 and August 2022. A true and correct copy of this information, which was provided by the County's attorney, is attached and incorporated herein as **Exhibit 5**.

43. Without an opportunity to contest the validity of the citation issued to the plaintiffs, Ms. Owen paid both the $50.00 fine and a $5.00 processing fee to GCAS.

44. Notwithstanding the payment of this fine, the plaintiffs continue to desire to contest the validity of the citation. By doing so, they hope both to be able to recover the money that Ms. Owen already paid as a result of the citation and to avoid the escalating fines described in the Animal Control Ordinance, whereby future violations (or alleged violations) result in fines greater than the initial fine levied against the plaintiffs.

### *Concluding factual allegations*

45. As a result of the actions or inactions of the defendants, the plaintiffs have suffered damages.

46. At all times the defendants have acted or refused to act under color of state law.

47. As a result of the actions or inactions of the defendants, the plaintiffs and the putative class are suffering irreparable harm for which there is no adequate remedy at law.

**Legal Claims**

48. The failure of the County and GCAS to provide a process by which persons who receive citations for allegedly violating the Animal Control Ordinance may challenge the allegations that have been levied against them violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Request for Relief**

   **WHEREFORE**, the plaintiffs and the putative class request that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Certify this cause as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

3. Declare that the defendants have violated the rights of the plaintiffs and the class for the reason described above.

4. Issue a preliminary injunction, later to be made permanent, requiring the defendants to provide constitutionally adequate process to challenge citations received by the plaintiffs and the members of the class.

5. Require the defendants to notify the members of the certified class of the opportunity to have a hearing, and the process for requesting such a hearing, to contest the written warnings and/or citations that they received and, as appropriate, to receive refunds of any payments that were previously made.

6. Award the plaintiffs their individual damages, including both compensatory and nominal damages.

7. Award the plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

8. Award all other proper relief.

Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
grose@aclu-in.org

*Attorney for the plaintiffs and the putative class*

## VERIFICATION

I hereby verify, under penalties for perjury, that the foregoing factual statements are true and correct to the best of my information and belief.

09/09/22
Date

*Kendra J Owen*
Kendra Owen

09/09/22
Date

*Shiela R Jackson*
Shiela Jackson

09/09/22
Date

*K R Jackson*
Kenneth Jackson